[No. B236738. Second Dist., Div. Six. Nov. 20, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
ARMANDO XIQUE NOCELOTL, Defendant and Appellant.

Counsel

Michael V. Severo for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Chung L. Mar and Seth P. McCutcheon, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**YEGAN, J.**—A negotiated decision specifying that probation would be granted if a diagnostic report (Pen. Code, § 1203.03)[1] were "favorable" necessarily incorporates the provisions of section 1203.03 as part of the agreement. This Penal Code section requires the Director of the Department of Corrections and Rehabilitation (Department of Corrections) to make "his" recommendation on whether probation or prison is appropriate. If he, and he alone, recommends that probation be granted, then the report is "favorable." If he, and he alone, recommends the contrary, it is not "favorable."

Armando Xique Nocelotl appeals from the judgment entered following his no contest plea to kidnapping in violation of section 207, subdivision (a). Pursuant to the negotiated disposition, he did not admit the allegation that the victim was under 14 years of age. (§ 208, subd. (b).) Appellant was sentenced to prison for the middle term of five years.

Appellant contends that (1) the trial court abused its discretion in denying his motion to withdraw his plea and (2) the trial court breached the negotiated disposition by refusing to grant probation. We affirm.

*Facts*

The victim, Mylin F., was a five-year-old kindergarten student. At the end of the school day, she was sitting on a bench waiting for her older brother to take her home. She was not acquainted with appellant. Appellant came up to her, grabbed her by the hand and escorted her off the school property.

Appellant and Mylin F. walked to a vehicle that was parked away from the school. Appellant "helped her get into the car in the front passenger seat." Mylin F. "became very scared and began to cry."

---

[1] All statutory references are to the Penal Code.

Appellant drove to his home and parked the car. Appellant's mother approached the vehicle and saw Mylin F. inside. Mylin F. "was crying and scared." Appellant's mother and sister drove Mylin F. back to the school, where she was reunited with her parents. Mylin F.'s father testified that she "was crying dramatically, scared, and just yelling out, 'Mommy, Mommy, Mommy.'"

## Negotiated Disposition

The trial court and the parties reached a negotiated disposition of the case. The trial court orally set forth the terms of the settlement: "[Appellant] will plead no contest or guilty to [kidnapping]. [¶] He will be sent for a diagnostic study pursuant to Penal Code section 1203.03.[2] [¶] If the report is favorable, a promise from me is that [appellant] will receive a probationary sentence with 360 days in custody or less. [¶] If the report is not favorable and [appellant] is sent to state prison, it is a [middle] term lid of five years as a promise from the People." Appellant then pleaded no contest to simple kidnapping.

## Diagnostic Study

The Department of Corrections prepared a diagnostic study consisting of three documents. One document is a psychological evaluation of appellant by two clinical psychologists. They opined that appellant "showed genuine remorse" and should be granted probation.

The second document is an evaluation of appellant by institutional staff at North Kern State Prison, where he was sent for the diagnostic study. The evaluation was signed by two "correctional counselors." They noted that appellant "has a drinking problem" and "considers himself a recovering alcoholic." Appellant claimed he was taking medication for his alcoholism and had been sober for one year.

In describing appellant's offense, the correctional counselors wrote: "During law enforcement[] interview with the five-year-old-victim, she stated [appellant] told her, 'I'm your friend.' The victim indicated she cried and told [appellant] to take her back to school, but he refused. [Appellant] stated to

---

[2] Section 1203.03, subdivision (a) provides: "In any case in which a defendant is convicted of an offense punishable by imprisonment in the state prison, the court, if it concludes that a just disposition of the case requires such diagnosis and treatment services as can be provided at a diagnostic facility of the Department of Corrections, may order that defendant be placed temporarily in such facility for a period not to exceed 90 days, with the further provision in such order that the *Director of the Department of Corrections report to the court his diagnosis and recommendations concerning the defendant within the 90-day period.*" (Italics added.)

her, 'If you don't be quiet I will hit you.' . . . During law enforcement interviews with [appellant], he claimed he thought the victim was his daughter and he was picking her up from school. [Appellant's] daughter lives at home with him and he had breakfast with her the morning of the incident." The correctional counselors concluded that appellant was not "a suitable candidate for probation" because appellant "has an extensive alcohol problem and tends to use [it] as an excuse for his actions." Appellant "never stated he was remorseful for the crime he committed. [He] continues to make excuses for his actions. He stated he understood the seriousness of the crime, but does not take responsibility for his actions."

The third document is a letter from the warden of North Kern State Prison. He recommended that appellant be committed to prison. The warden wrote: "[Appellant] appears to be an unsuitable candidate for probation. [He] is reluctant to take responsibility for the seriousness of his actions. It is believed if [he] were given a grant of formal probation, he would violate those terms and certainly present a significant risk to society."

*Motion to Withdraw Plea*

When he was returned to superior court after the diagnostic study, appellant moved to withdraw his no contest plea "in the event that the court does not sentence [him] to probation as required by the terms of the plea agreement if the 'report' is favorable." Appellant argued "that imposition of a sentence other than probation would be a violation of the plea bargain." In support of the motion, defense counsel declared that prior to the plea he had informed appellant "that the sentence the court would impose would depend upon the result of the psychological evaluation." Counsel continued, "I never mentioned . . . that a *recommendation* by the warden would be the basis for this court's sentence." Appellant declared: "When the court referred to a 'report' in the plea agreement, I understood it to be only a psychological report that would be generated by the evaluation. I received this understanding from discussions with my lawyer."

Appellant argued that good cause existed for the withdrawal of his plea because, based on counsel's advice, he had reasonably believed that he would be granted probation if the psychological evaluation were favorable, and it was favorable. Appellant did not contend, and does not now contend, that he was denied the effective assistance of counsel.

### No Abuse of Discretion in Denying Appellant's Motion to Withdraw No Contest Plea

Appellant contends that the trial court abused its discretion in denying the motion to withdraw his plea because defense counsel "led [him] to believe . . . that the only diagnostic report that was relevant would be [the one] generated by prison psychologists," who recommended that he be granted probation. Appellant argues: "[W]here a defendant is erroneously advised as to a central and material element of the plea agreement, withdrawal is appropriate."[3]

■ " 'Section 1018 provides that . . . "On application of the defendant at any time before judgment . . . the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted." Good cause must be shown for such a withdrawal, based on clear and convincing evidence. [Citation.]' [Citations.] 'To establish good cause, it must be shown that defendant was operating under mistake, ignorance, or any other factor overcoming the exercise of his free judgment. [Citations.] . . .' [Citation.] 'The burden is on the defendant to present clear and convincing evidence the ends of justice would be subserved by permitting a change of plea to not guilty.' [Citation.] [¶] 'When a defendant is represented by counsel, the grant or denial of an application to withdraw a plea is purely within the discretion of the trial court after consideration of all factors necessary to bring about a just result. [Citations.] On appeal, the trial court's decision will be upheld unless there is a clear showing of abuse of discretion. [Citations.]' [Citation.] 'Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged.' [Citation.]" (*People v. Weaver* (2004) 118 Cal.App.4th 131, 145–146 [12 Cal.Rptr.3d 742].)

■ The trial court did not abuse its discretion. Defense counsel's erroneous advice did not require the court to grant appellant's motion to withdraw his plea. "[T]he advice, persuasion, or expression of opinion of [a defendant's] attorney will not suffice to vitiate his plea, in the absence of some showing of corroboration by a responsible state officer [citations]." (*People v. Toth* (1964) 224 Cal.App.2d 130, 132 [36 Cal.Rptr. 417]; see *In re Nunez* (1965) 62 Cal.2d 234, 236 [42 Cal.Rptr. 6, 397 P.2d 998] ["In the absence of an allegation of state involvement, petitioner's allegation that counsel improperly induced him to enter a guilty plea does not state a ground for *coram nobis* relief."]; *In re Atchley* (1957) 48 Cal.2d 408, 418 [310 P.2d 15] ["Mere

---

[3] If either the trial court or the prosecutor had led appellant to believe that the only relevant report would be the one generated by prison psychologists, the contention would be meritorious. (See, e.g., *People v. Delles* (1968) 69 Cal.2d 906, 910 [73 Cal.Rptr. 389, 447 P.2d 629].)

advice or assurance by a private [or appointed] attorney to a defendant accused of crime will not vitiate a plea entered in reliance thereon."].)

In an amicus curiae brief in support of appellant's petition for rehearing, the Los Angeles County Public Defender argues that the information conveyed by counsel to appellant was more than mere advice. Counsel allegedly made a "factual misrepresentation[]" that appellant's sentence would depend upon the result of the psychological evaluation. Amicus curiae contends that such a factual misrepresentation concerning appellant's sentence suffices to vitiate his plea.

Counsel's misrepresentation was not a factual statement that the trial court had committed itself to granting probation if the psychological evaluation were favorable. The misrepresentation was an expression of counsel's opinion that the psychological evaluation would be the determining factor in the court's decision whether to grant probation. Such an expression of opinion does not suffice to vitiate appellant's plea.[4]

In any event, the trial court's decision was not arbitrary, whimsical, or capricious. (See, e.g., *In re Cortez* (1971) 6 Cal.3d 78, 85–86 [98 Cal.Rptr. 307, 490 P.2d 819].) Appellant, in effect, claimed that he had been operating under a mistake "overcoming the exercise of his . . . free judgment." (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416 [140 Cal.Rptr.3d 906].) To prevail on this theory, he was required to "show prejudice in that he . . . would not have accepted the plea bargain had it not been for the mistake. [Citation.]" (*Ibid.*) Appellant did not carry his burden. Nowhere in his declaration did he allege that he would not have agreed to the negotiated disposition if counsel had informed him that the "report" would include the

---

[4] Even if the misrepresentation were one of fact, it would still not vitiate the plea. In *People v. Gilbert* (1944) 25 Cal.2d 422, 443 [154 P.2d 657], our Supreme Court declared: "Mere advice and persuasion or the expression of matters of opinion by [the defendant's] own attorney will not suffice to vitiate the plea. *Neither will unwarranted or even wilfully false statements of factual matters by his attorney suffice.* . . . But if the representation of the private attorney presents a purported commitment by a responsible state officer which if actually made would vitiate the plea and if the acts or statements of such state officer, although innocently done or made, apparently corroborate the representation, are in good faith and without negligence relied upon by the defendant, and in truth operate to prevent the exercise of his free will and judgment, then the state in its solicitude for fairness will not accept the benefit of a plea so given." (Italics added.) Here, neither the trial court nor the prosecutor corroborated counsel's representation that appellant would be granted probation if the psychological evaluation were favorable. (See *People v. Reeves* (1966) 64 Cal.2d 766, 776–777 [51 Cal.Rptr. 691, 415 P.2d 35] ["purported misrepresentations by defense counsel that a specific sentence will be imposed are insufficient to vitiate a plea entered in reliance thereon; there must also be apparent substantial corroboration of or connivance in such misrepresentations by a responsible public officer, relied on in good faith by the defendant, and the misrepresentations must actually operate to preclude the exercise of the defendant's free will and judgment"].)

staff evaluation and the warden's recommendation. Even if appellant had so alleged, it is unlikely that the trial court would have credited the allegation. The negotiated disposition provided appellant with an opportunity to avoid a much lengthier prison sentence. If the "report" were favorable, he would be granted probation. Had appellant insisted on going to trial and been found guilty of kidnapping as charged, he could have been sentenced to prison for five, eight or eleven years. (§ 208, subd. (b).) So, even if he were not granted probation, the negotiated disposition would still be favorable to appellant.

Finally, we note that the seasoned trial judge was well aware of his discretionary power to allow appellant to withdraw his plea.

### No Violation of Negotiated Disposition

Appellant argues that the trial court's prison sentence violated the negotiated disposition because "in the face of inconsistent recommendations [in the diagnostic study], the 'report' could not be termed unfavorable to the Appellant." Resolution of this issue requires that we interpret the negotiated disposition.

■ "Because a 'negotiated plea agreement is a form of contract,' it is interpreted according to general contract principles. [Citation.]" (*People v. Segura* (2008) 44 Cal.4th 921, 930 [80 Cal.Rptr.3d 715, 188 P.3d 649].) " 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it governs. [Citation.]' " (*People v. Shelton* (2006) 37 Cal.4th 759, 767 [37 Cal.Rptr.3d 354, 125 P.3d 290].) ■ Here, the negotiated disposition must, of necessity, incorporate the provisions of section 1203.03. The provisions of this section are clear and explicit. (See *ante*, p. 1094, fn. 2.) As a matter of law, the phrase "favorable report" is not ambiguous and the "report" was not favorable to appellant. Although the two psychologists recommended probation, institutional staff and the warden recommended a state prison sentence. It is the warden's recommendation that is controlling. He is the duly designated agent for the Director of the Department of Corrections. (See *People v. Tang* (1997) 54 Cal.App.4th 669, 673–677 [62 Cal.Rptr.2d 876].) He has the power and the right to "overrule" his subordinates. Any other interpretation of section 1203.03 would do violence to the language of this section.[5]

---

[5] Had the psychologists opined that probation should not be granted and the correctional counselors opined to the contrary, our conclusion would be the same. Had the psychologists and the correctional counselors opined that probation should be granted, our conclusion would still be the same. The warden's recommendation is the controlling document in the section 1203.03 diagnostic packet. It alone determines whether the report is "favorable" or "unfavorable."

*Disposition*

The judgment is affirmed.

Gilbert, P. J., and Perren, J., concurred.

A petition for a rehearing was denied December 17, 2012, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 13, 2013, S207673.