Filed 2/6/14  P. v. Nash CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F065963 |
| Plaintiff and Respondent, | (Super. Ct. No. VCF262933) |
| v. | |
| MICHAEL DAVID NASH, | **OPINION** |
| Defendant and Appellant. | |

## THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Valeriano Saucedo, Judge.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Charity S. Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Gomes, Acting P.J., Franson, J. and Peña, J.

Michael David Nash appeals from a judgment following his plea of no contest to one count of making criminal threats (Pen. Code, § 422)[1] and his acknowledgement of two prior strike and serious felony convictions (§§ 667, subds. (b)-(e), 1170.12, subds. (a)-(d)), and one prior prison term (§ 667.5, subd. (b)).  Nash was sentenced to nine years in prison pursuant to a negotiated plea agreement.  His sole argument on appeal is that the trial court erred by refusing to allow him to withdraw his plea.  We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

Nash was arrested on the morning of January 26, 2012 after police responded to reports of a domestic disturbance at the residence he shared with his girlfriend, J.J.  Upon their arrival, Visalia police officers encountered the "visibly hysterical" girlfriend and listened to her describe a harrowing experience which she had just endured.  Fueled by anger and approximately ten shots of liquor, Nash had wrapped duct tape around J.J.'s hands, feet, and mouth, and repeatedly threatened to kill her as she sat helpless on the concrete floor of a detached garage.

At one point, Nash placed J.J. inside of his pickup truck and stated his intention to drive her to a remote location, "blow her face off" with one of his guns, and dump her body.  J.J. eventually escaped and ran to a neighbor's home for help.  Nash later barricaded himself inside the garage to avoid arrest, but was taken into custody following a standoff with the police department's SWAT team.

On March 12, 2012, the Tulare County District Attorney filed a criminal information charging Nash with making criminal threats (Counts 1 & 3), false imprisonment (§ 236; Count 2), kidnapping (§ 207, subd (a); Count 4), resisting, delaying, or obstructing an officer in the  performance of the officer's duties (§ 148, subd.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The facts relating to the charged offenses are taken from the preliminary hearing transcript.

2.

(a)(1); Count 5), inflicting corporal injury on a cohabitant (§ 273.5, subd. (a); Count 6), and resisting an executive officer by means of threats or violence (§ 69; Count 7). Enhancement allegations were attached to all of these counts except Count 5 based upon prior convictions in 2007 for felony assault on a police officer and a prior prison term served as a result of those convictions.

Nash was arraigned on March 19, 2012, at which time he pled not guilty to all charges and denied the special allegations. On August 1, 2012, pursuant to a plea agreement for a stipulated sentence of nine years in prison, Nash pled no contest to Count 1 and admitted the allegations regarding his prior convictions and prison term. In exchange for his plea and admissions, the remaining counts were to be dismissed and one of the prior strike convictions would be stricken. Judgment proceedings in accordance with the plea deal were scheduled to take place on August 29, 2012.

Nash filed a motion to withdraw his plea on August 29, 2012. Two grounds for relief were asserted in the written motion: First, Nash claimed to have had diminished mental capacity at the time of his guilty plea due to the effects of a prescription medication known as Seroquel. Second, he alleged the District Attorney intentionally misled him to believe that the victim, who had previously declined to testify at the preliminary hearing, was now willing to participate as a prosecution witness at trial. When the matter was heard by the trial court, Nash's arguments focused exclusively on the effects of his medication.

The motion hearing began on September 13, 2012 with Nash advising the court that he had skipped his morning medications in order to be cognizant for the proceeding. Had he not done so, jail personnel would have administered his regular dosages of Seroquel and other medications. In light of these representations, the trial court continued the hearing to allow medical staff at the jail to address the advisability of such behavior and any impact it might have on Nash's mental state.

When the hearing resumed the following day, Nash explained that he was prescribed Zoloft for depression, Seroquel as a sleep aid, and Gabapentin for pain relief. He had again refused the administration of his medications because doing so allowed him to have a "clear head." Referring back to the plea proceedings of August 1, 2012, Nash testified to taking his medications in the morning and consequently experiencing a "cloudy state of mind." In other testimony, Nash claimed to have no memory of accepting the plea agreement and submitted that he was unable to make rational decisions for himself at the time.

Testimony was received from Alyssa Padilla, who oversaw the mental health and health services operations in the Tulare County jail system. Ms. Padilla had no medical qualifications, but was able to discuss pertinent jail records relating to Nash's allegations. According to those records, Nash took his morning medications after returning from the August 1, 2012 hearing, not prior to attending it. The records further indicated Nash had been prescribed Prozac rather than Zoloft.

The trial court denied the motion at the conclusion of the hearing. The basis for its decision included the following observations: "Throughout July 31, Mr. Nash was an active participant in the trial process and never once did the Court observe Mr. Nash being sleepy or unable to proceed. Indeed, he was a very active participant in the jury selection process that was going on. He was regularly conferring with [his attorney] and was, from the Court's observation, clear in his behavior and his view of the matter that was before the Court.

"When he returned to court on August 1, 2012, and at the time that the Court took the change of plea, Mr. Nash appeared in the same condition that he'd been in on July 31 … Mr. Nash did not appear sleepy, he did not appear out of it. Indeed, he appeared very clear and, from the Court's perspective, ready to go." The trial court also referenced transcript excerpts from the August 1, 2012 hearing while discussing specific examples of Nash's active participation and apparent lucidity.

4.

Nash was sentenced to a nine-year term of imprisonment, consisting of four years on Count 1 plus an additional five years for the prison prior as required by section 667, subdivision (a)(1). A certificate of probable cause was issued with respect to the validity of his guilty plea. This timely appeal followed.

## DISCUSSION

Section 1018 authorizes the withdrawal of a guilty plea prior to judgment upon a showing of good cause. To establish good cause, the defendant must show by clear and convincing evidence that he or she pleaded guilty due to mistake, ignorance, or some other factor which overcame their exercise of free judgment. (*People v. Johnson* (2009) 47 Cal.4th 668, 679; *People v. Nocelotl* (2012) 211 Cal.App.4th 1091, 1096.) Although the statute is liberally construed to promote justice (§ 1018), "[g]uilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged." (*People v. Hunt* (1985) 174 Cal.App.3d 95, 103 (*Hunt*).) The outcome of a section 1018 motion lies within the discretion of the trial court based on its consideration of all relevant factors and circumstances necessary to bring about a just result. (*People v. Shaw* (1998) 64 Cal.App.4th 492, 495-496 (*Shaw*).)

The decision to deny a motion to withdraw a guilty plea will be upheld on appeal unless the defendant can show a clear abuse of discretion. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.) Such an abuse is found "if the court exercises discretion in an arbitrary, capricious or patently absurd manner resulting in a manifest miscarriage of justice." (*Shaw*, *supra*, 64 Cal.App.4th at p. 496.) The standard of review requires us to accept all factual findings of the trial court that are supported by substantial evidence. (*Fairbank*, *supra*, 16 Cal.4th at p. 1254.) "'Where two conflicting inferences may be drawn from the evidence it is our duty to adopt the one supporting the challenged order.'" (*People v. Harvey* (1984) 151 Cal.App.3d 660, 667)

On the issue of Nash's purported cognitive difficulties, it was entirely within the trial court's discretion to consider and rely upon its own observations of his appearance

5.

and demeanor.  (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 918.)  Absent a contrary showing in the record, we defer to the trial court's assessment that Nash was fully cognizant at the change of plea hearing and its credibility determination in rejecting his contrary claims at the plea withdrawal hearing.  (*Ibid*.)  Nash's self-serving testimony is insufficient by itself to establish grounds for reversal.  (*Hunt, supra,* 174 Cal.App.3d at p. 103.)

The transcript of the August 1, 2012 hearing indicates Nash responded intelligibly and appropriately to more than twenty different questions regarding his guilty plea and its legal implications.  In doing so, he specifically denied taking any "drugs, narcotics or prescription medication" that could affect his ability to understand the nature of the proceedings.  In addition, Nash's trial counsel responded affirmatively when the court asked, "Do you represent that in your judgment your client understands his rights?"  Finally, the veracity of Nash's post-plea contentions about being under the influence of medication was seriously called into question by the conflicting testimony of Ms. Padilla.  These facts constitute substantial evidence in support of the trial court's findings with respect to the validity of the guilty plea in this case.

We reach the same conclusion with regard to appellant's claim that the plea was improperly induced by means of fraud or deception.  As the argument goes, the District Attorney intentionally lied to defense counsel by representing that J.J., who had previously declined to participate in the criminal proceedings, "changed her mind and decided to testify."  Despite raising the issue, Nash essentially concedes he cannot satisfy his burden under the standard of review.  A footnote in his opening brief reads: "Unfortunately, it cannot be determined one way or the other whether this statement, if made, was true."  This is an accurate assessment of the evidence in the record, which means Nash did not establish good cause for the withdrawal of his guilty plea by clear and convincing evidence.  We thus find no abuse of discretion by the trial court in its denial of the motion.

## **DISPOSITION**

The judgment is affirmed.