Filed 9/26/14  P. v. De La Rosa

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058707 |
| v. | (Super.Ct.No. RIF1104476) |
| ANTHONY KENNETH DELAROSA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Irma Poole Asberry, Judge.  Affirmed.

Alison Minet Adams for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Warren Williams and Martin Doyle, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Anthony Kenneth de la Rosa appeals from a judgment of conviction of three counts of receiving stolen property. (Pen. Code, § 496, subd. (a).)[1] After the People had presented their case at trial, defendant elected to submit an "open plea" to the court, pleading guilty to all three substantive counts and also admitting that he had suffered a prior conviction for burglary, a "strike." (§§ 459, 667, subds. (b)-(i).) He also admitted that by committing the current offenses, he had violated probation in two earlier cases.

The plea was entered and accepted on February 8, 2013. On the date set for sentencing, February 26, defendant's attorney informed the court that defendant wished to withdraw his plea. Defendant acquired new counsel who filed a full motion to withdraw the plea on April 19. The trial court denied the motion and imposed a sentence of nine years four months.[2] Having duly obtained a certificate of probable cause, defendant now files this appeal challenging the denial of his motion to withdraw his plea. We affirm.

---

[1] All subsequent statutory references are to the Penal Code.

[2] The court imposed the upper term of three years for one violation of section 496, subdivision (a), doubled due to defendant's strike. The sentence also included consecutive one-third the midterms, doubled, on the other two counts, and eight months on a violation of probation case. Absent the last, the maximum for the current charges was eight years eight months.

STATEMENT OF FACTS

A.

The case.

Three separate homes were burglarized between June 14 and July 6, 2011. In the first burglary, among the items taken were a Tag Heuer watch and a Rolex watch. On July 21, the owner of a jewelry store in Los Angeles purchased a Rolex and a Tag Heuer watch from defendant, recording the latter's identification information in doing so. An expired driver's license and credit card taken from the second victim were later recovered from defendant's apartment. Other property belonging to the victims of the first burglary was also discovered in the apartment. Finally, the victim of the third burglary was able to supply a description and partial license plate for a vehicle that she observed first parked in front of her home as she arrived back from an absence, and then observed to have driven away while she discovered the burglary. This information led to defendant.[3]

B.

The plea.

In connection with the plea, defendant fully executed a "felony plea form," which informed him of the maximum sentence (see fn. 2). It was also blank as to any promised sentence. Defendant confirmed to the trial court that he had ample opportunity to discuss the matter with counsel and also that he understood the maximum possible sentence. The

---

[3] The detective investigating the case was told by a fellow officer that he had recently had contact with a person driving a similar vehicle with a similar plate.

3

court *did* indicate to defendant that it intended to refer the matter to probation for a report, which "would deal with the issues of your suitability for probation."

As mentioned above, when defendant returned to court for sentencing, he was apparently upset with some elements of the probation report, which included defendant's self-exculpatory version of the offenses.[4] Counsel told the court that he had advised defendant that it could work in his favor if he were to be seen accepting responsibility, and that defendant "feels as though he accepted far greater responsibility than the probation officer credited him with."

In the motion as eventually filed, defendant asserted that trial counsel had advised him to change his plea and had told him that "the judge would most likely sentence me to four to six years." He denied being advised that there was a "serious possibility that I could receive nine years and four months for pleading guilty." He also asserted that "[n]o one examined [*sic*] to me what it meant to plea [*sic*] open to the court. I simple [*sic*] thought that by pleading guilty I was getting a better deal and that I would not face the same penalties as I would if the jury convicted me."

---

**4** Defendant told the probation officers that items found in his apartment in a woman's purse were being held by his girlfriend for a friend, whom he would not identify. As for the watches that were sold, he explained that he was just accompanying another unnamed friend who did not have the necessary identification, so defendant innocently consummated the transaction. He did indicate that he "feels bad" for the victims.

At the hearing, defendant called his previous attorney to the stand. In summary, counsel testified that he had had extensive discussions with defendant and his former codefendant (apparently his girlfriend) who had already entered a guilty plea to unspecified charges. Counsel had conducted a practice session concerning the questioning both would face if they testified, and concluded that there was a high risk that damaging information would come in if they did so. (Such as defendant's prior theft-related convictions.) Counsel then explained to defendant that pleading guilty to all charges was known as "'throwing yourself on the mercy of the Court'" and that the probation officer would prepare a sentencing report, although he told defendant that probation "was basically not going to happen." Counsel also told defendant that he was probably facing at least the midterm if convicted after trial, and that if he testified and the court believed he did so falsely, the upper term was a "long [*sic*] possibility . . . with all of the subsequent offenses to be run consecutive." Defense counsel also discussed with defendant the advantages that might accrue if he accepted blame and admitted culpability. When asked if it was possible that defendant "didn't have a full understanding of what an open plea to the Court was," counsel responded that the maximum sentence had been discussed along with the difference between consecutive and concurrent sentencing, and the legal factors the judge would consider. Counsel also discussed his attempts to negotiate a more favorable plea agreement before the case went to trial, ending with an offer to have defendant testify against a third party to assist in securing a burglary conviction, but the prosecutor showed no interest.

5

Although in his declaration defendant asserted that counsel told him that he had only five minutes in which to decide whether to "accept the plea," defense counsel described discussions specifically relating to the decision stretching over at least 20 and possibly as much as 35 minutes during the lunch break, continuing after the return to court while counsel went over the plea form with defendant.

In arguing in favor of the motion, defendant's attorney pointed out that as it turned out, he gained nothing by his plea because he received the maximum anyway.

The trial court expressly found from the evidence that the trial court had rendered competent assistance and properly advised defendant, and that defendant had failed to establish good cause to withdraw his plea. It denied the motion.

DISCUSSION

A motion to withdraw a plea of guilty is authorized by section 1018 and is committed to the sound discretion of the trial court. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.) The defendant bears the burden of showing good cause by clear and convincing evidence. (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416.) "Good cause," in turn, means that the defendant has established that he or she was operating under mistake, ignorance, or any other factor overcoming the exercise of his or her free judgment. (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1207-1208.) Finally, a defendant who relies on a claim of misadvisal by counsel must show prejudice—that is, that he would not have entered the plea had it not been for the mistake. (*In re Moser* (1993) 6 Cal.4th 342, 352; *People v. Breslin*, *supra,* at p. 1416.) It is for the trial court, of

6

course, to evaluate credibility. (See *People v. Fairbank*, *supra,* at p. 1254; *People v. Nocelotl* (2012) 211 Cal.App.4th 1091, 1097-1098.)

Defendant argues in broad terms that his plea was constitutionally involuntary because he was misadvised "as to his eligibility for probation, his possible maximum sentence, and the effect of his prior strike."[5] We first note that nowhere in his declaration below did he assert that either the possibility of probation, or the effects of his prior strike conviction, was any factor in his decision to enter the plea. Nor did he set out any complaint concerning advice as to the maximum exposure. Thus, these claims were in fact waived.

Secondly, it is true that defendant was absolutely ineligible for probation due to the prior strike. (§ 1170.12, subds. (a)(1), (b)(1).) Hence, the plea form was mildly misleading insofar as it suggested that the trial court might decide to grant probation. However, trial counsel, although he did not explain the absolute bar, did inform defendant that probation "was basically not going to happen." As for not being advised of "the effect of his prior strike," defendant now argues that counsel "did not explain that the sentence calculation was the result of mandatory doubling of the upper term because of his strike prior although at the plea hearing and later at the plea withdrawal hearing he said he had informed him about the enhancements." As he thus admits, counsel testified

---

[5] In his reply brief defendant repeatedly states that he was "lied" to or "deceived" about the possibility of probation. He also asserts that not only his own attorney, but the prosecutor and the court lied to him. We cannot approve of this implication of conscious misrepresentation. Furthermore, as we note, defendant did not base his motion below on any claim that he had an expectation of probation.

that he did advise defendant of the effects of his prior strike. On the other hand, defendant's assertion that the mandatory doubling was not explained is wholly unsupported by the record. Even if defendant had provided the court with evidence to the contrary, the court would have been entitled to credit counsel's testimony. Instead, and as we have noted, defendant did not even raise this complaint in his declaration.[6] Thus, these points doubly fail.

Defendant also argues that counsel failed to advise him of the "looming probation violation," which eventually added eight months to the total term.[7] Again, unfortunately for him, this point was not raised in his declaration and understandably was not addressed by the parties at the hearing below. Again, any such claim has been waived. The same is true of the claim made here that trial counsel advised him both that he would do 80 percent of the sentenced time, and 85 percent.[8] That defendant did not raise this below is easily explained by the fact that even if counsel *did* relay both figures, as the

---

[6] We might also say "So what?" to the claim that counsel did not explain that the strike conviction compelled a doubled base term, as long as the resulting exposure was correctly described.

[7] The plea form contains the notation "9 y. 4 m." crossed out, with "8 y. 8 m[.]" below it. However, the language of the form is limited to describing the punishment "for the admitted charges and enhancements."

[8] No record citation is given for the supposed 85 percent advice and we have not located it; counsel did testify that he advised defendant that his credits would be limited to 20 percent.

correct credit limitation is the less severe one, any error in mentioning the 15 percent limitation cannot have prejudiced defendant.[9]

Having disposed of these claims that were not specifically raised below—and which therefore are not in any manner supported by the record—we turn now to what we believe is the gravamen of the appeal:  that defendant was misled about the likely term he would receive and that trial counsel gave up on the case without cause.  We find these claims equally meritless.

There is at least some record support for the claim that trial counsel was incorrectly optimistic about the projected sentence, as defendant declared that he was told he would likely get between four and six years.  Trial counsel, on the other hand, denied promising defendant that the trial court would be lenient.  The clear tenor of his testimony was that he believed the case would be lost and that if defendant and/or the former codefendant testified, it was likely to lead to the most severe punishment.  Counsel believed that the demonstration of personal responsibility represented by a guilty plea offered some chance of a more favorable outcome.

---

[9] As a second striker, defendant can accrue no more than 20 percent goodtime/worktime credits.  (§ 667, subd. (c)(5).)  If his current conviction had been for a "serious or violent felony," he could achieve no more than 15 percent credits.  (§ 2933.1, subd. (a).)  However, that statute does not apply to him.

Where there is no state involvement, the general rule is that the advice or opinion of counsel, even if erroneous in retrospect, does not compel permission to withdraw a defendant's plea. (*People v. Nocelotl*, *supra*, 211 Cal.App.4th at pp. 1096-1097.) However, it is also recognized that a defendant is entitled to base his decision on pleading guilty on the informed and competent advice of counsel. (*In re Vargas* (2000) 83 Cal.App.4th 1125, 1133.) This includes counsel's evaluation of the strength of the prosecution's case. (*In re Alvernaz* (1992) 2 Cal.4th 924, 933.) But this does not assist defendant.

He argues that the case against him was not strong, at least with respect to the items found in defendant's apartment, theorizing that because they were found in women's purses there is a "likelihood" that the stolen items were the result of activity by defendant's former codefendant and girlfriend of which he was unaware.[10] Pointing out that this person had already pleaded guilty to some charges, he implies that counsel could have succeeded in placing all responsibility for these stolen items on the girlfriend. But the record shows that counsel had conducted a mock cross-examination of both defendant and the girlfriend, and felt that the results were discouraging, and that placing either, or both, on the stand risked creating an unfavorable impression.

---

[10] The purses or bags were found in a room evidently shared by defendant and a female, although the trial record does not identify the roommate.

Defendant also suggests that a jury might have found reasonable doubt as to whether he knew the items he pawned were stolen. Rather puzzlingly, he asserts that "the People did not have the evidence to charge him with burglary, as to which the circumstantial evidence (his car at the scene immediately before the burglaries and his fingerprints on the pawn slips for items taken in the burglary) was perhaps stronger." The fact that the People elected not to charge defendant with burglary (and we note that there was no evidence concerning the driver of the vehicle at the victim's home, whether male or female) has little, if any, bearing on the question of whether the case for receiving or possessing stolen property, including the element of knowledge, was strong.

Defendant further argues that in fact he received no benefit because he was sentenced to the maximum possible. While this is true, the record supports trial counsel's belief that defendant effectively shot himself in the foot by clinging to an evasive and self-exculpatory version of the events when interviewed by the probation officer. Certainly nothing demonstrates that trial counsel's attempt to secure favorable sentencing for defendant was misguided.

In summary, while defendant's disappointment with the sentence he received is understandable, dashed hopes of leniency do not constitute grounds for withdrawal of a guilty plea. (*People v. Gottlieb* (1938) 25 Cal.App.2d 411, 415.) Those of his contentions not wholly unsupported by the record are nevertheless without merit, as we have explained.

11

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

RICHLI
J.

MILLER
J.

12