Filed 6/13/14  P. v. Sanchez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

      Plaintiff and Respondent,

v.

BRAULIO OROZCO SANCHEZ,

      Defendant and Appellant.

E057684

(Super.Ct.No. FVA1101767)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Dwight W. Moore, Judge.  Affirmed with directions.

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, Karl T. Terp and Parag Agrawal, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Braulio Orozco Sanchez pleaded guilty to two counts of robbery (Pen. Code,[1] § 211, counts 1 & 2), and admitted that he personally used a firearm during the commission of the robbery alleged in count 2, within the meaning of section 12022.5, subdivision (a). Before sentencing, defendant moved to withdraw his guilty plea contending (1) his plea was not knowingly and intelligently entered because his attorney did not competently advise him, and (2) his attorney rendered ineffective assistance by not investigating defendant's immigration status and not advising him of the immigration consequences of his plea. The trial court denied defendant's motion and sentenced him to 10 years in state prison. Defendant obtained a certificate of probable cause and timely appealed.

On appeal, defendant claims ineffective assistance of counsel, and argues the trial court erred by denying his motion to withdraw his guilty plea. Also, he argues that he is entitled to one more day of custody credit because 2012 was a leap year. The People concede defendant is entitled to an additional day of custody credit but contend the trial court properly denied defendant's motion to withdraw his plea. We agree with the People and affirm the judgment as corrected.

I.

PROCEDURAL BACKGROUND

The People charged defendant by felony complaint with seven counts of robbery (§ 211), seven counts of false imprisonment (§ 236), and one count of assault with a

---

[1] All further undesignated statutory references are to the Penal Code.

firearm (§ 245, subd. (a)(2)) arising from a home invasion robbery. At defendant's preliminary examination, an investigating officer testified that he had interviewed codefendant Gutierrez after the robbery. The codefendant told the officer that the residents of the home he and defendant entered were selling illegal narcotics, and the police had been unable to stop it. The codefendant told the officer that he broke into the house to take care of the problem, and that he was merely acting as a vigilante. The magistrate concluded there was no probable cause to bind defendant over for trial on three of the robbery counts, but bound him over on the remaining counts and special allegations. Thereafter, the People filed an information charging defendant with four counts of robbery (§ 211, counts 1-4), one count of assault with a firearm (§ 245, subd. (a)(2), count 5), and seven counts of false imprisonment (§ 236, counts 8-14).

A.     *Defendant's Guilty Pleas*

On the eve of trial, defendant entered into a plea agreement with the People. Defendant agreed to plead guilty to robbery as alleged in counts 1 and 2 and to admit to personally using a firearm with respect to count 2 in exchange for a sentence of 10 years in state prison and dismissal of the remaining counts and special allegations. Defendant signed a standard *Tahl*[2] form and initialed boxes, indicating that he was freely and voluntarily entering his guilty pleas, and that he knew and understood the trial rights he would be forsaking. Relevant here, defendant initialed a box next to the following statement: "I understand that if I am not a citizen of the United States, deportation,

_____

[2] *In re Tahl* (1969) 1 Cal.3d 122.

3

exclusion from admission to the United States, or denial of naturalization will result from a conviction of the offense(s) to which I plead guilty/no contest."

During the plea hearing, the trial judge asked defendant whether he had read the plea form, and asked defendant whether his signature and initials on the form indicated that he understood the charges to which he was agreeing to plea and whether he understood the rights he was agreeing to waive. Defendant answered, "Yes," to each of the judge's questions. The judge then confirmed with counsel that (1) defendant would be pleading guilty to robbery as alleged in counts 1 and 2, (2) the People would move to amend the information to allege defendant personally used a firearm with respect to count 2, which defendant would admit, and (3) the parties recommended a sentence of 10 years in state prison. The judge then asked defendant if that was his understanding of the plea agreement, and defendant responded, "Yes, sir."

During the plea colloquy, defendant denied that anyone made any threats against him in order to induce his plea, and also denied that he was under the influence of drugs, alcohol, or medication. Defendant indicated to the judge that he had sufficient time to discuss his case with his attorney, including discussing his trial rights, possible defenses to the charges, and the consequences of entering a guilty plea. With respect to possible immigration consequences of his plea, the trial court asked defendant: "You understand that if you're not a citizen of the United States, the consequences of this conviction will include deportation, exclusion from admission to the U.S., or denial of naturalization?" Defendant answered, "Yes, sir." The judge then inquired of defense counsel whether she had sufficient time to discuss the plea form with defendant and whether she was satisfied

4

that defendant understood what he was agreeing to do. Counsel answered affirmatively and joined in defendant's waiver of his trial rights. Based on these statements by defendant and by his attorney, the trial judge concluded that defendant had read and understood the plea form, that defendant understood the nature of the charges against him and the consequences of his plea, that he understood the rights he would be waiving by pleading guilty, and that defendant was knowingly and intelligently waiving those rights.

The judge then accepted defendant's guilty pleas to robbery as alleged in counts 1 and 2; accepted his admission to personally using a firearm with respect to count 2; and accepted a stipulation by counsel to the preliminary hearing transcript as a factual basis for the plea. Finally, the judge found that defendant's guilty pleas and admission were freely, voluntarily, knowingly, and intelligently entered, and found that a factual basis existed for the guilty pleas and admission.

B.    *Defendant's Motion to Withdraw His Guilty Pleas*

Before sentencing, defendant moved to withdraw his guilty pleas and admission. He argued that his former attorney did not properly investigate a possible defense that he was merely present during the robbery; that his codefendant was the one who had discharged a firearm; and that his plea was not made knowingly and intelligently because he entered his guilty plea under the mistaken advice of counsel that he had no chance of an acquittal if he proceeded to trial. Defendant also argued that his attorney rendered ineffective assistance because she did not properly investigate his immigration status and did not advise defendant of the potential consequences of his guilty plea.

5

During the hearing on defendant's motion, his then former attorney testified she had not obtained defense funds from the trial court to hire an investigator until after the preliminary hearing. She also testified that the investigator was not able to locate the alleged victims or character witnesses to interview them.

Defendant's former attorney testified that defendant told her he was unsure if he was a citizen of the United States, but he thought he might be a permanent legal resident. She testified that she told defendant that if he was not a citizen, that would be a problem because he would be deported if he was convicted of a felony. The former attorney further testified that she spoke to defendant's mother. The mother told the former attorney that she became a naturalized citizen when defendant was a child and that she thought defendant automatically became a naturalized citizen too. The former attorney told the mother that deportation was a possibility if defendant was not a citizen. Based on this conversation, the former attorney assumed that defendant was probably naturalized. The former attorney was unsure about defendant's immigration status, and she told his family and girlfriend they should probably consult with an immigration attorney if they were having trouble determining whether defendant would be deported or not.

The former attorney testified that, on the day of defendant's plea, she went through the possible immigration consequences of the plea with defendant while explaining the plea form to him. She expressly told defendant, "if you're not a citizen of the United States and you're convicted of anything, of a felony, *you will be deported*." (Italics added.) She told this to defendant notwithstanding that she thought he might be a

naturalized citizen. She also testified that she was familiar with the decision in *Padilla v. Kentucky*,[3] she understood her duty to advise defendant of the immigration consequences of his plea, and that she had, in fact, advised him of those consequences on the day of his guilty plea.

On cross-examination, the former attorney testified that, when preparing for trial, she read the police reports and the codefendant's confession, in which he had admitted he did everything and that defendant was merely along for the ride. She was also aware that the victims had criminal records. Nonetheless, the former attorney advised defendant to take the 10-year plea deal because she believed his chances at trial were not good, and he faced 36 years or more in state prison. She also testified that she believed defendant understood that his plea would have immigration consequences.

On redirect, the former attorney testified the codefendant's confession pointed to a possible good result for defendant, but she continued to believe defendant might be found guilty based on accomplice liability. She felt defendant was under a lot of pressure to plead guilty, and that he was conflicted because he insisted that he was innocent. The former attorney conceded it was possible that defendant had been "bullied" into pleading guilty because his family wanted him to take the plea deal. She discussed the case with defendant many times, and on the day of the plea, she told defendant it was his decision whether to plead guilty. She gave him the lunch hour to think it over. The former attorney testified that, after the lunch hour, defendant did not appear to be unsure about

---

[3] *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*).

his decision. She believed defendant's plea was intelligently and knowingly entered. She did not believe defendant was overwhelmed by information or that he did not have enough time to digest the information and make an informed decision before pleading guilty.

On further cross-examination, the former attorney testified she did not believe defendant was coerced into pleading guilty. She testified on further direct examination that defendant may have felt pressure to take the plea deal. She did not ask the judge for more time for defendant to consider the plea because trial was about to start. Defendant told her that he wanted to go to trial, but she advised him to take the plea deal. The former attorney also testified she told defendant's girlfriend there were questions about defendant's immigration status, and that defendant would be deported if he was not a citizen and he was convicted. She also told defendant's girlfriend that she should consult an immigration attorney if she wanted more information about deportation.

Defendant's girlfriend testified that the former attorney told her defendant had no defense, and that at trial the attorney would merely follow the lead taken by the codefendant's attorney. The girlfriend testified the attorney told her that she hired an investigator, but that the investigator was unable to find anything; that the victims' names came up "clean," without criminal records. Defendant's girlfriend testified that when she asked the former attorney about defendant automatically becoming a citizen based on his parents' naturalization, the attorney told her she did not have the answer to that question, and that the girlfriend would have to speak to an immigration attorney.

Defendant testified that he only had a "couple quick visits" with his former attorney and that she did not discuss possible defenses with him. When asked if the former attorney explained what was going on in his case, he answered, "Somewhat." Defendant said he told his former attorney that he was not guilty, that he did not do any of things alleged by the People, and that it was the codefendant who did everything during the robberies. He testified that he also told his former attorney that he wanted to go to trial, but that she responded by telling him he should consider a plea because he had no way of winning.

Defendant testified that on the day of his plea, he did not know what he was doing. Defendant did not understand the waiver of rights that he had signed, and he merely signed the form because his former attorney told him to. He testified that he told his former attorney he did not want to plead guilty, but she told him he had no choice but to sign the plea form. Defendant believed he was bullied into pleading guilty because he was told he had no way of winning at trial, and that if he did not plead guilty he might be sentenced to 30 or more years in state prison.

Defendant testified that during the first visit with his former attorney, he told her he was a permanent resident and that he had never become a citizen. His former attorney never told him he would be deported if he was convicted, and that she never discussed immigration consequences of a guilty plea with him. Defendant testified he did not remember initialing the plea form next to an advisement of immigration consequences, and that he remembered initialing many boxes and not knowing what he was doing. He was scared and nervous, and he did not understand the judge's oral advisement of the

9

waiver of rights and of the immigration consequences of a guilty plea. Defendant testified that his former attorney told him to say "yes" to what the judge was saying. He only answered affirmatively because his former attorney told him to do so. He testified he did not discover the immigration consequences of his plea until a day or two later, and that he immediately contacted his former attorney and told her that he pleaded guilty because he was scared and did not know what to do.

On cross-examination, defendant testified he did not discuss accomplice liability with his former attorney. He said that accepting the plea deal was a difficult decision for him because he did not understand why he should be punished for something he did not do. Defendant remembered the judge asking him if he understood his plea, and he remembered telling the judge that he did understand the plea, that he had spoken to his former attorney about the plea, and that he did not need additional time to talk to his former attorney about the plea. However, on further direct examination, defendant testified that he only told the judge that he understood because his former attorney told him to do so.

The judge hearing defendant's motion to withdraw the plea was the same judge who took defendant's plea. The judge asked defendant a series of questions about the plea hearing. Defendant replied that he remembered the judge going over the plea form with him and remembered that the judge asked him if his signature and initials on the form meant he understood the plea. Defendant also said he remembered that he answered affirmatively. However, defendant said he did not remember the judge asking him if he had any questions about the plea form and did not remember answering, "No, sir."

10

Defendant testified he remembered the judge asking him if he was satisfied that he understood what he was doing and if he was satisfied that it was his decision to proceed with the guilty plea. But, defendant testified that he did not remember answering, "Yes, sir."

Defendant's new attorney argued defendant's plea was not knowingly and voluntarily entered because, as his former attorney had testified, defendant was conflicted and was possibly bullied into pleading guilty. The judge interjected that he understood defendant's former attorney to mean she believed defendant was conflicted and felt pressure to take the plea, and she did not mean that defendant was threatened when she used the word "bullied." The judge also noted that any defendant who is deciding between pleading guilty and proceeding to trial will experience similar conflicting feelings.

Defense counsel also argued that defendant's former attorney did not satisfy her obligations under *Padilla*, and instead told defendant's family to consult with an immigration attorney because she did not know if defendant would be deported. The judge responded to this argument by stating that his understanding was the former attorney testified she assumed defendant was a naturalized citizen and told the family to consult with an immigration attorney if they were unclear about defendant's immigration status; but that the former attorney testified that she nonetheless told defendant he would be deported if he pleaded guilty and he was not a citizen. Defense counsel further argued that, because defendant's former attorney was unsure about defendant's immigration status, she had a "higher duty" under *Padilla*.

The prosecutor argued that defendant's former attorney did not render ineffective assistance and that she reasonably advised defendant to plead guilty. With respect to *Padilla*, the prosecutor argued that a defense counsel has a duty to advise their client of obvious immigration consequences of a guilty plea, but they are not required to become immigration law practitioners on the side. The prosecutor argued defendant's former attorney was not required to figure out defendant's immigration status, and that she satisfied her obligation under *Padilla* by informing defendant he would be deported if he was not a citizen and was convicted.

C.     *The Trial Court's Ruling on the Motion*

The trial court found it unreasonable that defendant could not remember so many things about the plea colloquy, and concluded defendant's assertion that he did not understand what he was doing when he pleaded guilty was not believable. The court found that defendant could have chosen to go to trial but chose instead to plead guilty. According to the court, defendant "entered the plea with his eyes wide open," and his protestations that he just did what his former attorney told him to do was not believable either. With respect to the claim of ineffective assistance of counsel, the trial court found that defendant's former attorney did, in fact, advise defendant that if he pleaded guilty, and he was not a citizen, he would be deported. Therefore, the trial court denied the motion.

12

D.    *Sentencing*

The trial court sentenced defendant to an aggregate term of 10 years in state prison and dismissed the remaining counts and special allegations in the interests of justice pursuant to section 1385.  The trial court awarded defendant 350 days of actual credit for time served in presentence custody, and awarded him 52 days of conduct credit, for a total of 402 days of credit toward his sentence.

II.

DISCUSSION

In his motion to withdraw his plea and in his briefs in this court, defendant discusses his former attorney's alleged ineffective assistance both in the context of his statutory motion under section 1018 and in the context of his constitutional claims. Because those are separate claims, we discuss them separately and find them to be unpersuasive.

A.    *The Trial Court Properly Denied Defendant's Statutory Motion to Withdraw His Guilty Plea*

"""Section 1018 provides that . . . 'On application of the defendant at any time before judgment . . . the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted.'  Good cause must be shown for such a withdrawal, based on clear and convincing evidence.  [Citation.]"  [Citations.] "To establish good cause, it must be shown that defendant was operating under mistake, ignorance, or any other factor overcoming the exercise of his free judgment.  [Citations.] . . ."  [Citation.]  "The burden is on the defendant to present clear and convincing

13

evidence the ends of justice would be subserved by permitting a change of plea to not guilty." [Citation.] . . . .'" (*People v. Nocelotl* (2012) 211 Cal.App.4th 1091, 1096.) "[C]lear and convincing evidence denotes proof that is clear, explicit, and unequivocal and leaves no substantial doubt. [Citations.]" (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 402.)

"'"'Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged." [Citation.]' [Citation.]" (*People v. Nocelotl, supra*, 211 Cal.App.4th at p. 1096.) "It is entirely within the trial court's discretion to consider its own observations of the defendant in ruling on such a motion. [Citation.] The court may also take into account the defendant's credibility and his interest in the outcome of the proceedings. [Citations.]" (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 918 (*Ravaux*).) "'A plea may not be withdrawn simply because the defendant has changed his [or her] mind.' [Citation.] . . . 'A denial of the motion will not be disturbed on appeal absent a showing the court has abused its discretion.' [Citations.] 'Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them.' [Citation.]" (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416 (*Breslin*).)

Defendant's former attorney testified she counseled defendant to take the plea deal rather than face his poor chances at trial and a potential sentence of more than 30 years in state prison. She testified that she explained the plea to defendant, went through the plea form with him, reviewed all of the waivers of his trial rights and other advisements on the plea form with him, and told him the decision to take the plea was his. The attorney

14

testified she also told defendant to take the lunch hour to think it over. She testified that when court resumed after the lunch break, defendant did not appear to be unsure about his decision to plead guilty. Although she thought defendant was conflicted and under some pressure to take the plea deal, ultimately she believed defendant knowingly and intelligently pleaded guilty, and that he was not coerced into pleading guilty.

In his own testimony, defendant claimed that during the hearing regarding his plea, he did not understand what was going on or what rights he was waiving. He testified that his former attorney told him to sign and initial the form, and he did as he was told. Defendant testified that he remembered some of what the judge told him or asked him during the plea colloquy, and he remembered some of his answers. However, defendant testified he did not understand what was going on because he was scared and nervous, and he answered the judge's questions affirmatively because his former attorney told him to do so. Defendant testified he only pleaded guilty because he did not know what to do and because his former attorney told him that he had no other choice. He stated that he never wanted to plead guilty and that he wanted to proceed to trial because he felt he was innocent. He testified that he felt bullied and pressured into pleading guilty.

Defendant did not present clear and convincing evidence that his plea was not knowingly and intelligently made. The judge who heard defendant's motion also took defendant's plea, and he was in a good position to gauge, from his observations, whether or not defendant's testimony was credible. (*Ravaux*, *supra*, 142 Cal.App.4th at p. 918.) We cannot second-guess the trial court's express findings that defendant's testimony was

15

not credible or worthy of belief, or its implied findings that defendant's former attorney was a credible witness. (See *People v. Ogg* (2013) 219 Cal.App.4th 173, 180 (*Ogg*).) And the court's findings that defendant had a choice to go to trial, but instead knowingly and intelligently pleaded guilty with his eyes wide open, are amply supported by defendant's former attorney's testimony.

Although defendant may not have agreed with his former attorney about his chances of succeeding at trial, defendant ultimately accepted counsel's advice that he accept the plea deal. "Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." (*Brady v. United States* (1970) 397 U.S. 742, 756-757; see also *Breslin*, *supra*, 205 Cal.App.4th at p. 1417.)

In sum, the record amply supports the trial court's conclusion that defendant understood the choice he made, that he understood what he was giving up in exchange, and that he knowingly and intelligently pleaded guilty.

16

B.	*The Trial Court Properly Denied Defendant's Claims of Ineffective*

*Assistance of Counsel*

As noted, defendant's statutory claim that his plea was not knowingly and intelligently entered was tied to his claim that his former attorney rendered ineffective assistance by not properly investigating defenses and by giving defendant faulty advice to plead guilty. Although the trial court's findings focused on the statutory question and not on the constitutional question, the record supports the trial court's implied findings that counsel did not render ineffective assistance by advising defendant to plead guilty. Moreover, the record amply supports the trial court's express finding that defendant's former attorney satisfied her duty under *Padilla*.

"A criminal defendant is constitutionally entitled to effective assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Strickland v. Washington* (1984) 466 U.S. 668, 684–685 . . . (*Strickland*); [citations].) To show denial of that right, a defendant must show (1) his or her counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) the deficient performance prejudiced the defendant. (*Strickland*, at pp. 687, 691–692 . . . [citations].) To show prejudice, a defendant must show there is a reasonable probability that he or she would have received a more favorable result had his or her counsel's performance not been deficient. (*Strickland*, at pp. 693–694 . . . [citation].) It is the defendant's burden on appeal to show that he or she was denied effective assistance of counsel and is entitled to

17

relief. [Citation.] '[T]he burden of proof that the defendant must meet in order to establish his [or her] entitlement to relief on an ineffective-assistance claim is preponderance of the evidence.' [Citation.]" (*Breslin*, *supra*, 205 Cal.App.4th at p. 1418.)

"The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. [Citation.] 'Where, as here, a defendant is represented by counsel during the plea process and enters his [or her] plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases."' [Citation.] 'The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial.' [Citation.]" (*Breslin*, *supra*, 205 Cal.App.4th at pp. 1418-1419.)

Defendant's former attorney testified she read the police reports regarding the robbery and read the codefendant's confession, in which he admitted to the police that he did everything during the robberies and that defendant was just along for the ride. She further testified that she knew the victims in this case were no angels, and that they had criminal records. The attorney also testified that she obtained defense funds from the trial court and had hired an investigator to interview the victims and potential character witnesses. However, she did not think the investigator ever actually interviewed them.

18

Although she believed the codefendant's confession might have benefited defendant at trial, she nonetheless believed defendant might still have been found guilty as an accomplice and that he could have faced a sentence of 36 years in state prison.

Defendant's contrary testimony, which the trial court clearly disbelieved, was that his former attorney only met with him on a couple of occasions and that she never discussed possible defenses or accomplice liability with him. Defendant testified that he told his former attorney about the victims having criminal records, that he felt he was innocent of all the charges, and that he wanted to go to trial. Defendant's girlfriend, whose testimony the judge also clearly disbelieved, testified the former attorney told her defendant had no defense and that the attorney would merely follow the lead taken by the codefendant's attorney. She also testified the former attorney told her the victims had no criminal records.

As already noted, we cannot second-guess the trial judge's express and implied findings regarding the credibility of witnesses. (See *Ogg*, *supra*, 219 Cal.App.4th at p. 180.) Although the judge made no express finding to the effect that defendant's former attorney competently represented him, the judge's statements about the strengths and weaknesses of the case, that he would have given the same advice to take the plea deal, and that he believed defendant made the right choice to plead guilty, demonstrated that the judge impliedly made such a finding. And the testimony presented at the hearing constitutes substantial evidence to support the trial court's implied finding. Defendant's former attorney exercised her professional judgment and advised defendant that, notwithstanding his codefendant's confession and the obvious credibility issues of the

19

victims, defendant still faced an uphill battle at trial, and he would be better served by taking the plea deal rather than facing the uncertainty of a jury trial and a potential sentence of 36 or more years in state prison. On the record before us, we conclude this advice was within the range of reasonableness for criminal defense attorneys. Therefore, we hold the trial court properly concluded defendant did not establish that his attorney provided incompetent representation when she advised him to plead guilty.

Even if we were to conclude defendant established that his former attorney's representation was deficient, we find no prejudice. Defendant never expressly stated, either in his declaration or during his live testimony, that he would not have pleaded guilty if his former attorney had competently advised him. To the extent such a statement was implicit in defendant's testimony, that he did not want to plead guilty and that he only did so because his former attorney told him he had no other choice, we conclude it is insufficient to establish prejudice under *Strickland*. A defendant's "self-serving" assertion that he or she would not have pleaded guilty had he or she received adequate representation and advice "is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims." (*In re Alvernaz* (1992) 2 Cal.4th 924, 938.) Because defendant presented no other evidence to establish he would not have taken the plea deal anyway, we find no prejudice.

Finally, we hold the trial court properly rejected defendant's claim under *Padilla*. In *Padilla*, *supra*, 559 U.S. 356, the United States Supreme Court held that the Sixth Amendment right to effective representation of counsel includes the right to be advised

20

by counsel of the possible immigration consequences of a guilty plea. (*Id*. at p. 374.) In *Padilla*, defense counsel knew his client was a lawful permanent resident but not a citizen, and erroneously advised the defendant that his guilty plea to transporting marijuana would have no consequence on his immigration status. (*Id*. at p. 359.) The court noted that it would have been simple for counsel, who knew of his client's immigration status, to have discovered the dire consequences of a guilty plea merely by looking at the federal removal statute. (*Id*. at pp. 368-369.) Because counsel misadvised his client of the consequences of a guilty plea, the court concluded his representation was deficient. (*Id*. at pp. 374-375.) But as the majority and concurring opinions acknowledged, immigration statutes are not always very clear and determining a person's immigration status is often easier said than done. (*Id*. at p. 369; *id*. at pp. 379-380 (conc. opn. of Alito, J.).)

Contrary to the defendant's assertions here, the high court in *Padilla* did not hold that defense counsel has a further obligation to investigate a client's specific immigration status and to advise the client accordingly. (See *State v. Stephens* (2011) 46 Kan.App.2d 853, 856 ["The *Padilla* Court did not . . . impose upon counsel the duty to investigate the citizenship or immigration status of every client in a criminal case"].) As long as an attorney advises a defendant that by pleading guilty to a felony he or she will be deported *if* he or she is not a citizen of the United States, the attorney has satisfied their duty under *Padilla* whether or not the attorney knows for certain that the defendant is or is not a citizen.

There is substantial evidence in the record that defendant's former attorney did in fact tell defendant and his family that, if defendant was not a citizen, he would be deported if he were convicted or pleaded guilty, and there is substantial evidence in the record that defendant understood deportation would be a consequence of his plea. The trial court acted within its discretion to reject as not credible defendant's and defendant's girlfriend's contrary testimony. That defendant's former attorney assumed defendant was likely a naturalized citizen, based on the conflicting information she obtained from defendant and his family, but did not investigate further to determine his immigration status, is irrelevant. She erred on the side of caution in advising defendant that he would be deported if he was not a citizen. Therefore, we must adopt the trial court's express finding that the attorney properly advised defendant of the immigration consequences of his plea. Because the attorney acted competently pursuant to *Padilla*, the trial court properly rejected defendant's claim of ineffective assistance of counsel.[4]

C.  *Defendant Is Entitled to an Additional Day of Presentence Credit for Actual Days in Custody*

Defendant contends, and the People concede, that the trial court's award of presentence credit for 350 actual days in custody does not reflect that the month of

---

[4] On the eve of oral argument, defendant submitted citations to the opinions in *People v. Martinez* (2013) 57 Cal.4th 555 and *People v. Soriano* (1987) 194 Cal.App.3d 1470, which were not discussed in the briefs. *People v. Martinez* was decided before the respondent's brief was filed in this case, and *People v. Soriano* has been on the books for more than 20 years. Defendant has provided no explanation why he was unable to locate those citations beforehand, and we decline to consider them at this late stage. In any event, those decisions in no way alter our conclusions.

22

February 2012—during which defendant was in custody—had 29 days because of a leap year. We take judicial notice of the fact that 2012 was a leap year, and that February of that year had 29 days. (Evid. Code, § 452, subd. (h).) The clerk of the superior court shall correct the minutes of sentencing to reflect that defendant is entitled to an additional day of presentence custody for actual days in custody, for a total of 351 days.

III.

DISPOSITION

The clerk of the superior court is directed to correct the minutes of sentencing to award defendant 351 days of credit for actual days in presentence custody. As corrected, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:


HOLLENHORST
Acting P. J.


KING
J.