Filed 10/27/14  P. v. Keyes CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Modoc)

----

| | |
|---|---|
| THE PEOPLE, | C070310 |
| Plaintiff and Respondent, | (Super. Ct. No. F11173) |
| v. | |
| SHEENA NACOLE KEYES, | |
| Defendant and Appellant. | |

Defendant Sheena Nacole Keyes crashed a vehicle containing two other adults and three small children while driving under the influence.  One of the adults was seriously injured and the children were emotionally traumatized.  After defendant entered into a plea agreement with a range of possible sentences, the trial court imposed the maximum sentence possible under the agreement.  Defendant moved to withdraw her plea on the ground that she mistakenly believed the trial court was going to grant her probation based on the advice of counsel.  The trial court denied her motion.  Defendant contends the trial

1

court abused its discretion by denying her motion. Alternatively, she contends trial counsel was ineffective for misadvising her as to the likely consequences of her plea.

We conclude that defendant has not shown prejudice because she has failed to show there is a reasonable probability that, but for counsel's misadvice, she would not have entered her pleas and would have instead insisted on going to trial.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### The DUI Crash[1]

At around 2:00 p.m. on May 1, 2011, California Highway Patrol (CHP) Officer Jason Viehdorfer responded to the site of a one-car collision on a rural road. Off to the side of the road he found a substantially damaged four-door sedan in which three adults and three children had been riding.

Defendant was sitting outside the car with the children, her son and the two sons of one of the other adult passengers, Dawn Rosenthal. Defendant had suffered minor injuries. An adult male who smelled of alcohol, Phillip Scaggs, was lying on the ground to the rear of the car, moaning and in pain. Rosenthal was lying on the passenger floorboard, with her legs protruding out of the passenger door. She was unconscious and had suffered massive facial trauma.

Officer Viehdorfer determined the car had rolled over, left the roadway, and traveled about 240 feet before it came to a stop. There appeared to be no reason the car should have gone off the road.

CHP Officer Cody Pennell interviewed defendant at Modoc Medical Center. She could not remember the accident, but she remembered that she and Rosenthal had split a half-pint of Black Velvet between 9:00 and 9:30 a.m. Her breath smelled of alcohol, her

---

[1] The facts related to the crime are from the preliminary hearing, which served as the factual basis for defendant's plea.

2

eyes were bloodshot, red, and watery, and her speech was slightly slurred. After conducting the horizontal gaze nystagmus test, Officer Pennell concluded defendant was under the influence of alcohol. A blood sample taken an hour after the accident showed that defendant's blood-alcohol level was 0.11 percent.

Rosenthal's four-year-old son T.H., who had been sitting in the back seat of the car with the other children, told Officer Pennell that defendant was driving and Rosenthal was in the front passenger seat. T.H. said the car was travelling very fast, hit a bump, spun out of control, and crashed.

Four-year-old C.H., T.H.'s brother, nodded his head "yes" when Officer Pennell asked if defendant was driving.

Phillip Scaggs told Officer Pennell that he, Rosenthal, and the children had gone to "the lake" (Dorris Reservoir) around 10:00 a.m. on the date of the accident to barbecue hot dogs and swim. He and Rosenthal had been drinking. Defendant was supposed to get a ride to join them at the lake, but could not, so Rosenthal left the children with Scaggs and went to pick up defendant. Scaggs claimed he could not recall anything about the accident because he had gotten too intoxicated at the lake.

Sherrie C. told Officer Pennell that she had been at the lake and had given defendant and Scaggs a jumpstart because their battery was dead. Defendant and Rosenthal were "staggering around drunk." Sherrie C. was so concerned about the children's safety that she offered to give the kids a ride home, but her offer was declined. Defendant got in the driver's seat and drove away. Sherrie C. heard emergency vehicle sirens about 10 minutes later.

Based on these statements, and on the fact that the driver's seat was positioned for a short, small-framed individual like defendant (Scaggs and Rosenthal were larger), Officer Pennell concluded that defendant was driving the car and that she was under the influence of alcohol when it crashed.

3

## Events Preceding the Plea

The People filed an information that charged defendant with driving under the influence and causing bodily injury to another person (Veh. Code, § 23153, subd. (a)--count 1); felony child endangerment (Pen. Code, § 273a, subd. (a)--counts 2-4); driving on a suspended license because of a DUI-related conviction, a misdemeanor (Veh. Code, § 14601.2, subd. (a)--count 5); and driving on a suspended license without a functioning ignition interlock device, a misdemeanor (Veh. Code, § 23247, subd. (e)--count 6). As to count 1, it was alleged that defendant had sustained a prior DUI conviction. (Veh. Code, §§ 23152, subd. (b), 23540, subd. (a).) As to count 5, it was alleged that she had sustained a prior conviction for driving on a suspended license. (Veh. Code, § 14601.2.)

At a pretrial conference on July 5, 2011, attorney William Briggs, who had represented defendant up to this point, stated that Thomas Gifford had substituted in as defense counsel but could not be present that day. The trial court continued the matter to July 19, 2011.

On July 19, 2011, with Gifford appearing for defendant, the trial court continued the matter to August 2, 2011.

On August 2, 2011, an in-chambers discussion was held at Gifford's request. The trial court then granted the People's unopposed motion to file a first amended information and set the matter for a further pretrial conference on August 30, 2011.[2]

The first amended information realleged all previously alleged counts and enhancements, and added the allegation as to count 1 that defendant caused great bodily harm to the victim. (Pen. Code, §§ 1192.7, subd. (c)(8), 12022.7.)

---

[2] There is no reporter's transcript for this date in the appellate record.

On August 30, 2011, Gifford requested a further continuance because he had just received an offer from the district attorney and wanted to "fine tune it a little bit." The trial court continued the matter to September 27, 2011.

On September 27, 2011, Gifford moved to continue the matter for a change of plea. The trial court continued the matter to October 11, 2011.[3]

On October 11, 2011, Gifford advised the trial court that he might be substituting out of the case because of a breach of his retainer agreement. However, Gifford requested a pre-plea report. When the probation officer in court expressed concern about the new attorney possibly being disinclined to go along with the offer, the following colloquy ensued:

"THE COURT: I understand what you are saying, but I don't think there is an agreement, I think the purpose of the pre-plea report would be to find out what the department would be recommending to the Court in the event she's convicted of the offenses.

"MR. GIFFORD: That's correct, Judge.

"[PROBATION OFFICER]: That would be fine. . . . [¶] . . . [¶]

"MR. GIFFORD: The offer that's been made to me, which I relayed to my client, is there is a six-year cap on a conditional plea.

"THE COURT: We don't do pre-plea referrals on capped pleas. Because as counsel [*sic*] has pointed out, we don't know if you're going to be the attorney, and I don't want to waste Probation's time by having them recommend whether I should accept a plea or not, when there hasn't been a plea entered, and you may not be her attorney.

"MR. GIFFORD: I think we should just refer it over to probation to find out what their recommendation would be.

---

[3] There is no reporter's transcript for this date in the appellate record.

5

"THE COURT: This is just if she pled out without any conditions?

"MR. GIFFORD: Yes.

"THE COURT: That's the only way that I would do it. I don't want to start a trend of doing pre-plea conditional plea reports. That's complicated enough without adding that to the mix."

The trial court referred the matter for the pre-plea report. During these proceedings, no mention was made of any indicated sentence previously made by the court.

The probation department's pre-plea report, filed November 22, 2011, recommended that if defendant pleaded to the charges absent a conditional plea, she should receive a six-year prison sentence, consisting of the three-year upper term on count 1 plus the three-year enhancement on that count, with all other terms (the upper term of six years on counts 2 through 4, a one-year sentence on count 5, and a six-month sentence on count 6) to run concurrent to the principal count.

The report noted that defendant admitted she "was drinking and on pills," but said she did not remember if she was driving because she "was so messed up." She said she had been a drug addict and alcoholic most of her life and had never before sought counseling or treatment. She hoped for probation with a treatment program. Defendant had been convicted of driving with a blood alcohol level of 0.08 or higher (Veh. Code, § 23152, subd. (b)) in November of 2008 and driving on a suspended license because of a DUI-related conviction (Veh. Code, §14601.2) in March of 2011 and had been placed on three years' probation for each conviction.

The report recommended against probation because it found that the circumstances in aggravation outweighed the circumstances in mitigation, and one of the adult victims,

6

Rosenthal, had suffered severe brain injuries which required round-the-clock care and supervision and might never significantly improve.[4]

The report also said the child victims were suffering from emotional problems. Defendant's four-year-old son, A.C., would not sleep alone, has nightmares, and screams in fear while riding in a vehicle. T.H., Rosenthal's four-year-old son, had recently broke down crying when the brakes screeched in a car in which he was riding. Rosenthal's other four-year-old son, C.H., has issues with bedwetting and is incontinent during the school day. Both brothers now sleep with their father because they are afraid. They were going to have counseling for post traumatic stress disorder.

On November 22, 2011, the same day the pre-plea report was filed, attorney Briggs substituted back into the case as defense counsel.

### The Plea

On December 20, 2011, defendant entered a written change of plea. In return for the dismissal of count 6, driving on a suspended license without a functioning ignition interlock device, and the prior suspended license conviction enhancement as to count 5, driving with a suspended license because of a DUI related conviction, defendant pleaded no contest to counts 1 through 5 and admitted the great bodily injury enhancement as to count 1.

When the case was called, Briggs told the court "we have a proposed resolution in this matter," and handed the court an executed plea form. Briggs did not orally state his

---

[4] In aggravation, the report stated that the crimes alleged in counts 1 through 4 involved bodily harm or the threat of great bodily harm, disclosing a high degree of callousness; the victims were vulnerable--Rosenthal because of her intoxication and the minors because they were only four years old and at defendant's mercy--and defendant was on probation with alcohol related conditions when the crimes were committed. In mitigation, the report stated that defendant had an insignificant record of criminal conduct and that she committed the crimes while under the influence of alcohol, which might reduce her culpability.

understanding of the "proposed resolution." The plea form stated: "[P]ossible sentence ranges from credit for time served to 6 years state prison & residential program." There was no mention of an indicated sentence or an express reference to probation or a suspended sentence on the plea form.

Before taking defendant's plea, the court asked defendant whether the initials and signature on the plea form were her initials and signature, and defendant acknowledged that they were. The following colloquy then took place:

"THE COURT: Did you have an opportunity to read and understand this document, and to review any issues or questions you had about it with your attorney?

"THE DEFENDANT: I didn't read it, I just signed it.

"THE COURT: Well, let me go over it with you very quickly. First of all, it indicates to me that you're entering what's called an open plea. The possible sentence range would be from time served to six years in state prison. And you don't know what's going to happen, and I don't know what's going to happen, that's what I mean by open; you're taking your chances and kind of rolling the dice as to what the ultimate sentence might be. [¶] . . . [¶] . . . What that means is I would take your pleas and admissions today and set this matter for sentencing on another day. And you would be present, of course, with your attorney, and able to present to me evidence in the form of testimony or documents to convince me to do what it is you think I ought to do, and the District Attorney will have an opportunity to present victim statements and evidence and testimony to try to convince me what they think I should do. [¶] And they're liable to be arguing that I sentence you to six years in state prison. I don't know what I'm going to do, because I'm not going to decide until after I hear everything. And that's what I mean by an open plea and the fact that you're taking a risk as to what your ultimate sentence would be. Do you understand all of that?

"THE DEFENDANT: Yes."

8

Towards the end of the plea allocution, the court asked the following question and defendant gave the following answer:

"THE COURT: And other than what has been discussed here in this courtroom this afternoon, has anyone promised you anything in order to get you to plead no contest and admit certain things in this case today?

"THE DEFENDANT: No."

After defendant entered her pleas and admissions, the court found that defendant had knowingly and intelligently waived her rights and had freely and voluntarily entered her pleas and admissions. The court accepted the pleas and admissions and thereafter deferred sentencing to January 17, 2012, because the prosecutor had not yet received victim impact statements.

### The Sentencing Hearing

At the sentencing hearing on January 17, 2012, the trial court heard victim impact statements from Rosenthal's husband and parents. The prosecutor argued for the six-year prison sentence recommended by the probation department in the pre-plea report, which had been available prior to the plea.

Defense counsel Briggs responded that the appropriate sentence would be, "as the Court earlier indicated when Mr. Gifford was the attorney, . . . a year in county jail, a year in residential program, and a six-year suspended sentence." Briggs added: "[W]hen I took over the case, *an indicated sentence*[5] was relayed to me by the District Attorney, as

---

[5] As defendant now acknowledges on appeal, strictly speaking, this proposed resolution could not have been an "indicated sentence" because in return for defendant's no contest plea and admissions, the prosecutor dismissed a count and an enhancement. An indicated sentence is a sentence the court says it will impose when a defendant pleads guilty or no contest to all of the charges and allegations. At the time of the plea here, there was significant controlling authority noting the distinction between an indicated sentence and a plea bargain. "In an indicated sentence, a defendant admits all charges, including any special allegations and the trial court informs the defendant what sentence will be

9

well as by Mr. Gifford, and in reliance on that, I advised [defendant] to enter this plea. I know that is a conditional indication based on presentations made by Mr. Gifford on [defendant]'s behalf, and it was conditioned on whether any new information would come before the Court. [¶] I don't think there is any new information coming before the Court today that the Court did not anticipate at the time it gave its indicated [sentence]."

The prosecutor denied that the trial court had given an indicated sentence.

The court stated, "Well, as far as I recollect we had discussions among counsel and the Court about possible things that would happen, but I don't know that I ever made a specific indicated sentence under any circumstances . . . ."

After Briggs indicated there was no legal cause why judgment should not be imposed, the court imposed a six-year prison sentence, finding that the circumstances in aggravation outweighed those in mitigation. In particular, the court found that although defendant was remorseful, she had "acted about as irresponsibly as one could act in this case" and "what's worse, there was a prior conviction of driving under the influence [and] a prior conviction for driving on a suspended license, a license which had been suspended because of a driving under the influence conviction." The court added, "[p]robably what tips me, what tips me the way that I've decided that I will go in this

---

imposed. No 'bargaining' is involved because no charges are reduced. [Citations.] In contrast to plea bargains, no prosecutorial consent is required." (*People v. Allan* (1996) 49 Cal.App.4th 1507, 1516.) A trial court's indicated sentence is given based on a set of facts made known to the court at the time of the plea. (*People v. Woosley* (2010) 184 Cal.App.4th 1136, 1146.) The sentencing court may withdraw from the indicated sentence if there is a change in the facts upon which the court based its indicated sentence or additional facts come to light. (*People v. Labora* (2010) 190 Cal.App.4th 907, 915.) And the defendant reserves the "right to withdraw the plea and go to trial in the event the court determines that the facts recited are not confirmed in a fashion which enables it to sentence the defendant in accord with the condition." (*People v. Superior Court* (*Felmann*) (1976) 59 Cal.App.3d 270, 276.) Our high court recently reaffirmed these principles and elaborated on the procedure for indicated sentences in *People v. Clancey* (2013) 56 Cal.4th 562.

case is the effect that this case will have on the rest of the people out there who read and hear about what happened in this courtroom today." After a family member of defendant complained to the court about the sentence, the trial court explained to the family member, "while I can't fix what happened by what I do today, the people that haven't yet done what [defendant] did are going to read and hear about what happened, what the consequences of those actions are. [¶] . . . [¶] So what I was doing today has to do with, yes, holding [defendant] accountable and responsible for her acts on that day, but also for providing a message to the rest of the people out there who might otherwise do a similar thing."

Defendant exclaimed, "I don't understand what my sentence is."

Briggs then orally moved to withdraw defendant's plea. In doing so, Briggs said, "as I stated in my . . . presentation to the Court, I was under the impression that there was an indicated [sentence], and that was what Mr. Gifford had told me, and I had heard nothing from the District Attorney's office that contradicted that." The trial court stated that a motion in writing, supported by a declaration from attorney Gifford, would be required.

### Defendant's Motion to Withdraw Her Plea

On January 20, 2012, defendant filed a written motion to withdraw her plea (or, in the alternative, to vacate defendant's sentence based on ineffective assistance of counsel, or to deem the motion a petition for writ of error coram nobis). The motion was supported by declarations from Gifford, Briggs, and defendant, which we summarize below.

11

**Gifford's Declaration**

Gifford stated that on August 26, 2011,[6] he and Deputy District Attorney Christopher Brooke (who was also the prosecutor at the sentencing hearing) participated in a settlement conference with Judge Mason (who presided at the change of plea hearing, sentencing hearing, and hearing on the motion to withdraw the plea). Gifford argued that this was not an appropriate case for a state prison term because Rosenthal, who owned the car and then got too drunk to drive, was complicit in the crime. Judge Mason disagreed, but mentioned as mitigating factors that defendant was young and had never been to state prison. Gifford added that defendant had a two-year-old son who was staying with the grandmother. Judge Mason "announced that *his impression* was that he would impose a lengthy state prison sentence to [defendant] and suspend execution and give her one year County Jail as a term of probation and that she would need to be enrolled in a drug and alcohol residential program after her County Jail term." (Italics added.)[7] However, the prosecutor disagreed with this proposed disposition.

After the settlement conference, Gifford advised defendant of "the substance" of the discussion. They agreed the matter should be referred to probation for a presentence report.

---

[6] This settlement conference is not reflected in the record on appeal. During the August 30, 2011 hearing, Gifford indicated to the judge who was substituting for Judge Mason that day that the parties had had an "informal settlement conference" the previous week.

[7] We note Gifford's use of the words "his impression" and that he did not say Judge Mason gave an "indicated sentence." Indeed, even if Gifford had understood Judge Mason to have made an indicated sentence on August 26, Gifford should have realized he was mistaken when, on October 11, Judge Mason said there had been no agreement, balked at ordering a pre-plea report when Gifford informed him the prosecution had made a capped offer, and agreed to order the report only for the purpose of determining what recommendation the probation department might make if defendant "pled out without any conditions."

Gifford sent the prosecutor Brooke a letter dated September 1, 2011, in which he stated: "I have received your offer and have relayed it to [defendant]. However, as you will recall we discussed with Judge Mason that one of the potential terms of probation would be an inpatient rehab, after the serving of a 1 year jail sentence. [Defendant] does not have the financial wherewithal to pay for that. We may be able to resolve this case if you would amend the Complaint to add a Count that is Drug Court eligible such as under the influence of a controlled substance, which would allow [defendant] to get a referral to Drug Court residential rehab. I called your office several days ago, but have not heard back from you. Would you please check into this?"

Brooke replied in a letter[8] several days later, which stated: "Pursuant to your letter of September 1, 2011, Drug Court and Prop. 36 treatment courts do not pay for one year inpatient rehabilitation. The individuals that go to a one year program go to a free program, such as Salvation Army. Therefore, there is no need to amend the charges in this case."

In his declaration, Gifford stated that the prosecutor's letter "essentially confirms the substance of my September 1, 2011 correspondence, as well as circumstantially confirms or corroborated the discussions which took place with JUDGE MASON and the settlement conference."

Conspicuously absent from Gifford's declaration is any reference to conversations he had with Briggs. Gifford did not say what information he relayed to Briggs about the settlement conference discussions.

---

[8] These two letters were attached to the Gifford declaration as exhibits.

13

**Briggs's Declaration**

When Briggs substituted back into the case, Gifford informed him that "*the substance of*[9] the in-chambers discussion was . . . six years state prison sentence-- suspended with a year in county jail and a year in a residential program." Reviewing the file, Briggs found the abovementioned correspondence between Gifford and the prosecutor. Briggs called this correspondence, "confirming memos." Subsequently, Briggs spoke to the prosecutor. Regarding that conversation, Briggs wrote, "That when I discussed the issue with [Deputy] District Attorney Christopher Brooke he confirmed that the judge had stated that he had indicated that the same as above [*sic*]."[10]

Based on all of these facts, Briggs recommended to defendant that she "enter the open plea" and advised her that if the court did not sentence "as per his indicated," she would be allowed to withdraw the plea. In accordance with Briggs's understanding of the "indicated sentence," he included on the written plea form the words, "residential program."

**Defendant's Declaration**

Defendant stated that Gifford told her Judge Mason "had indicated that he was intending to sentence [her] to six years state prison, suspended sentence, to complete one year in county jail, to then complete one year residential program." Briggs told her the same thing, but also said the judge could change his mind, but if he did, she could withdraw her plea. Defendant then stated, "Based on the representations of both

---

[9] We note Briggs's use of the words, "the substance of" to describe what Gifford told him. Briggs did not say in his declaration that Gifford had said Judge Mason gave an "indicated sentence."

[10] We note that Briggs again did not say he was told that Judge Mason gave an "indicated sentence." The use of the word "indicated" in this nearly unintelligible sentence appears to relate to what is stated above, i.e., "the substance of" the in-chambers discussions.

14

attorneys that represented me, I entered the plea." She concluded with, "Because what the judge sentenced me to was not what the attorneys told me the judge would sentence me to, I wish to withdraw my plea."

Defendant did not mention the advisements the judge made to her prior to her plea. More importantly, defendant did not say she would have rejected the prosecutor's open plea offer and insisted on a trial had counsel not told her the judge intended to sentence her to probation, a year in jail and a residential drug program and that she could withdraw her plea if the judge did not sentence her as indicated.

**The Hearing on Defendant's Motion and Sentencing**

Judge Mason read out his advisement from the change of plea hearing where he said under defendant's "open plea" she could receive anywhere from time served to six years in state prison and he did not know what the sentence would be. He then stated to the parties, "That seems [a] pretty clear . . . indication that the Court did not feel bound by any prior discussions that may have been had in the case."

Briggs responded that notwithstanding the court's advisement, he had understood that there was an indicated sentence which the court would follow absent changed circumstances or new information at the time of sentencing.

Judge Mason stated, "the Court indicated to Counsel in informal discussions about the possible ways to resolve the action, that I would consider and that I could go along with a suspended prison sentence and county jail confinement for a year . . . followed by a lengthy inpatient residential treatment program, if that's what Counsel agreed to do. [¶] But Mr. Brooke indicated quite clearly then and afterwards, both to the Court and apparently, based on the exhibits that you attached to your motion, to Mr. Gifford as well, that Mr. Brooke and his office were not prepared to make that kind of an offer.[11] And

---

[11] The correspondence attached to defendant's motion does not contain the statement the court attributed to the prosecutor.

15

so my indication was I would go along with that kind of an offer if it was made, but it was not. [¶] . . . [¶] . . . It's not an indicated sentence, that's just an informal discussion that might or might not lead to a resolution of the case, and in this case it did not."

Briggs replied that neither Gifford nor Brooke had communicated "that proviso" to him, and that therefore he had advised defendant there was an indicated sentence. If he was at fault, his conduct amounted to ineffective assistance of counsel.

Judge Mason stated that he was sure there was "some form of discussion that was had between Mr. Gifford, Mr. Brooke and myself" and that discussion was probably conveyed to defendant, but what really mattered was not what counsel thought, but whether defendant knowingly, intelligently, freely and voluntarily entered her plea. Her responses to the court's advisements showed she had done so, especially given that she already knew what the probation report recommended.

Briggs said, "if the Court is suggesting that there was a practice that I should have followed as her attorney in--during this soliloquy of obtaining the waiver, that I should have injected that there was indeed an indicated sentence, that is certainly my error, and I certainly apologize to the Court for my error. [¶] Generally speaking, it's my understanding in the entering of pleas that every Defendant pretty much follows the lead of the Court and relies on their attorney to interject at the appropriate times. [¶] Usually I do that in terms of pointing out whether or not there's an agreement of formal versus informal probation, and various side agreements that are not obvious to the court, and I erred in not doing that in this case."

Judge Mason pointed out, "Well, neither you nor your client brought to the Court's attention that either of you had any expectation other than the fact that this was an open plea. And the plea agreement itself . . . indicated that it was an open plea and that the sentence range was from zero or time served, to six years in state prison and so forth." In response to Briggs's assertion that Briggs believed the court was obligated to impose the sentence he perceived had been indicated unless there were changed

16

circumstances or evidence about which the court had not been aware, the court said that there *was* additional information--the victim impact statements, which "updated the condition of Ms. Rosenthal."

The court denied defendant's motion to withdraw her plea and imposed a six-year state prison term. The court designated count 2, felony child endangerment, as the principal term and imposed the six-year upper term thereon, then ran a three-year sentence on count 1, DUI with injury, and the three-year enhancement on count 1 concurrent, along with the sentences on the remaining counts.

### DISCUSSION

Defendant contends: (1) The trial court abused its discretion by denying her motion to withdraw her plea because she entered the plea under a mistake of fact and (2) "Arguendo, trial counsel was ineffective in not formally confirming any sentencing expectations before advising [defendant] to waive her constitutional rights to a jury trial and change her plea to no contest."

The People respond that defendant failed to show by clear and convincing evidence that she entered her plea under a mistake of fact, and that her claim of ineffective assistance of counsel fails because she cannot show prejudice from taking counsel's advice to enter the plea. We agree with the People.

"On application of the defendant at any time before judgment . . . , the court may . . . , for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted." (Pen. Code, § 1018.)

" 'Good cause' means *mistake*, ignorance, fraud, duress or any other factor that overcomes the exercise of free judgment and *must be shown by clear and convincing evidence*. [Citation.] The grant or denial of such a withdrawal motion is 'within the sound discretion of the trial court and must be upheld unless an abuse thereof is clearly demonstrated.' [Citation.]" (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 917 (*Ravaux*), italics added.)

17

"[A] reviewing court must adopt the trial court's factual findings [on a motion to withdraw a plea] if substantial evidence supports them." (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.) " ' "On appeal, the trial court's decision will be upheld unless there is a clear showing of abuse of discretion. [Citations.]" [Citation.] "Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged." [Citation.]' [Citation.]" (*People v. Nocelotl* (2012) 211 Cal.App.4th 1091, 1096 (*Nocelotl*).)

## A. Mistake

Whatever understanding Gifford and Briggs had and whatever understanding defendant had based on what counsel told her, both Briggs and defendant should have been disabused of that understanding, or at least questioned it, when the trial court explained its position prior to defendant entering her pleas and admissions.

We note the following about defendant's change of plea: (1) the change of plea form she signed made clear that she could receive a six-year prison sentence--it did not say the trial court had indicated a sentence of probation or a suspended sentence with one year in jail and a treatment program; (2) the court orally advised defendant in open court that it might well impose a six-year state prison sentence--it did not state an indicated sentence of probation or a suspended sentence with one year in jail and a treatment program; (3) the trial court explained the open plea using terms like "rolling the dice" and taking a "risk," and defendant said she understood; (4) defendant also said no one had promised her anything outside the plea agreement to induce her change of plea; (5) defendant entered her plea with the knowledge that the probation department had recommended a six-year prison sentence in a pre-plea report; and (6) neither defendant nor counsel mentioned any "indicated sentence" involving a grant of probation on which they were relying before defendant entered her pleas and admissions.

As we have noted, to establish good cause for withdrawing her plea based on mistake, defendant had to establish mistake by clear and convincing evidence in the trial

18

court. (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416 (*Breslin*); *Ravaux, supra,* 142 Cal.App.4th at p. 917.) On appeal, the trial court's decision will be upheld unless there is a clear showing of abuse of discretion. (*Nocelotl, supra,* 211 Cal.App.4th at p. 1096.) We conclude that defendant has failed to carry her burden.

### B. Ineffective Assistance of Counsel

To the extent that defendant ignored the advisements given by the trial court about the open plea and entered the plea based on what counsel had previously told her, her plea was the product of that advice and not mistake.

The two-part test in *Strickland v. Washington* (1984) 466 U.S. 668, 691-695 (*Strickland*) applies to guilty and no contest pleas based on ineffective assistance of counsel. (*Breslin*, *supra*, 205 Cal.App.4th at pp. 1418-1419.) To show denial of the right to effective assistance of counsel, defendant must show: (1) her counsel's performance was below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced her. (*Strickland, supra,* 466 U.S. at pp. 691-692; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217; *Breslin*, *supra*, 205 Cal.App.4th at p. 1418.)

#### 1. Deficient Performance

Whether counsel's performance was deficient depends on whether it " ' "was within the range of competence demanded of attorneys in criminal cases." ' " [Citation.] (*Breslin*, *supra*, 205 Cal.App.4th at p. 1419.) Briggs as much as admitted his performance was deficient. We note four glaring errors: (1) Briggs substituted back into the case the same day the pre-plea report was filed, but at no time did Briggs check with Judge Mason about whether anything in the pre-plea report changed the judge's mind about the indicated sentence Briggs says he thought the judge had made; (2) the plea form Briggs provided to the court did not set forth what he later claimed was his and defendant's understanding that the court was going to sentence defendant to probation, a year in jail and a year-long residential drug treatment; (3) when Briggs advised the court

19

that there was going to be a resolution in the case, he did not orally state his understanding of the resolution on the record; and (4) when the court told defendant her plea was an open plea and that it did not know what sentence it would impose within the sentencing range, Briggs did not inform the court of his understanding of the resolution and that he had advised defendant pursuant to that understanding. As Briggs recognizes, his representation of defendant was clearly deficient in this regard.

### 2. Prejudice

The general test for prejudice in claims of ineffective assistance of counsel requires a defendant to show a reasonable probability that she would have received a more favorable result had counsel's performance not been deficient. (*Strickland*, *supra*, 466 U.S. at pp. 693-694; *Ledesma*, *supra*, 43 Cal.3d at pp. 217-218.) In the context of pleas resulting from ineffective assistance of counsel, the test is more specific, yet it is well-settled.

When a defendant challenges a guilty or no contest plea based on ineffective assistance of counsel, the focus is on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, *the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial*." (*Hill v. Lockhart* (1985) 474 U.S. 52, 59, italics added.) There are many California decisions recognizing and applying this prejudice test. (See *In re Resendiz* (2001) 25 Cal.4th 230, 253 (*Resendiz*); *People v. Miralrio* (2008) 167 Cal.App.4th 448, 463; *In re Vargas* (2000) 83 Cal.App.4th 1125, 1134.) Defendant recognizes the test, but her argument is limited to saying, counsel admitted his mistake, "that a diligent ordinarily prudent lawyer in a criminal case would not have made this same mistake," that counsel's "conduct fell below the standard of a reasonably competent attorney, and prejudiced [defendant] by virtue of pleading no contest rather than exercising her right to a jury trial." Defendant has failed to show prejudice.

20

Defendant filed a declaration which did not include a representation that she would have insisted on going to trial had she known she was going to be sentenced to six years state prison instead of receiving a suspended sentence, one year in jail and a treatment program. Nor did she say she would have insisted on a trial instead of pleading to the open plea as described by the trial court had she known the court would not allow her to withdraw the plea as long as it sentenced her within the open plea sentencing range.

Even if she had made those assertions, such assertions " 'must be corroborated independently by objective evidence.' " (*Resendiz, supra,* 25 Cal.4th at p. 253.) Our Supreme Court has identified several factors to consider in this regard. " 'In determining whether a defendant, with effective assistance, would have accepted [or rejected a plea] offer, pertinent factors to be considered include: whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; *the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer*; and whether the defendant indicated he or she was amenable to negotiating a plea bargain.' [Citation.]" (*Resendiz, supra*, 25 Cal.4th at p. 253 (italics added); *Breslin, supra*, 205 Cal.App.4th at p. 1421.) "[A]n appellate court also *may consider the probable outcome of any trial*, to the extent that may be discerned." (*Resendiz, supra*, 25 Cal.4th at p. 254 (italics added); see also *Breslin, supra*, 205 Cal.App.4th at p. 1421.)[12]

Two circumstances are compelling here--the probable outcome of the trial and the disparity of the probable consequences of the plea.

---

[12] Even if defendant had shown by clear and convincing evidence that her plea was the product of genuine mistake, she would still be required to make the same showing of prejudice. (*Nocelotl, supra*, 211 Cal.App.4th at pp. 1096-1097; *Breslin, supra*, 205 Cal.App.4th at p. 1416.)

The evidence presented against defendant at the preliminary hearing was overwhelming. That evidence placed her behind the wheel when the crash occurred, driving while significantly under the influence and on a suspended license, while on probation for prior convictions for both offenses. The evidence showed there had been an offer to drive the children home by a person who perceived defendant was too intoxicated to drive. The evidence further showed defendant was driving fast, hit a bump and lost control. The ensuing crash resulted in great bodily injury to Rosenthal. Finally, the evidence showed that defendant's conduct endangered the safety of three young children and they sustained emotional trauma. Nothing in this record suggests a defense or any way in which defendant could have raised a reasonable doubt as to any of the charges or enhancements.

Furthermore, the maximum sentence under the stipulated sentencing range was significantly more lenient than the sentence she would have faced if tried and convicted on all counts and enhancements. According to the plea form, defendant had been told her maximum exposure was 10 years 2 months. Of course, that did not include the count and enhancement that were dismissed, which would have added an additional year. The court arrived at its six-year sentence by running all subordinate terms concurrent to the principal term. These subordinate terms involved multiple victims, including two of the three child victims. The court would not have been required to choose concurrent sentencing following a conviction after trial. And in light of the court's remarks at sentencing about the egregiousness of defendant's conduct and the message the sentence should communicate,[13] there is little reason to presume the court would have sentenced

_____

[13] "Deterring others from criminal conduct by demonstrating its consequences" is one of the several general objectives in sentencing set forth in the California Rules of Court. (Rule 4.410(a)(4).) "[T]he sentencing judge must consider which objectives are of primary importance in the particular case." (Rule 4.410(b).) It is understandable why the sentencing court here found this factor to be important.

defendant to less than the maximum sentence after hearing all of the evidence at trial, particularly in light of information the court learned about Rosenthal's injuries, which it did not know at the time it accepted defendant's plea.

Therefore, on this record, defendant has failed to persuade us that it is reasonably probable she would have rejected the resolution she obtained, and instead insisted on proceeding to trial, had trial counsel not misadvised her.

**DISPOSITION**

The judgment is affirmed.

                                                                          MURRAY         , J.

We concur:

         BUTZ               , Acting P. J.

         DUARTE          , J.